**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**RACHEL WADE,**

    *Plaintiff,*                    Case No.: 3:26-cv-1653

    *v.*

**CLARITY SERVICES, INC.,**           **JURY TRIAL DEMANDED**

    *Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Rachel Wade ("Ms. Wade"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Ms. Wade against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k), because the Defendant regularly conducts business in the State of Florida and within this District, and because the acts giving rise to this action occurred within this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ms. Wade's claims occurred in this District, where Ms. Wade resides.

## PARTIES

### Ms. Wade

5. Ms. Wade is a natural person residing in Orange Park, Clay County, Florida.

6. Ms. Wade is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a

cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Mixes Ms. Wade's Credit File with that of an Unrelated Person

10. Around July 19, 2021, Clarity began maintaining a credit file on Ms. Wade.

11. At some point after it began maintaining a file on Ms. Wade, Clarity started incorporating credit information belonging to a separate, unrelated consumer into her file.

12. Clarity falsely associated information apparently belonging to an unrelated individual named "Joshua Williams" into Ms. Wade's credit file.

13. As of April 30, 2026, the information likely belonging to Joshua Williams which Clarity wrongfully associated with Ms. Wade includes:

    a.    "Date of next paycheck" of February 11, 2022, as of February 7, 2022;

    b.    "Date of next paycheck" of May 4, 2023 as of April 28, 2023;

    c.    Phone number ending 1421;

    d.    "Months at Employer: 62" as of April 28, 2023;

    e.    Net monthly income of $2,917 as of April 28, 2023;

f.    Credit application with WithU Loans on April 28, 2023; and,

g.    Credit application with Cash Advance Now as of February 7, 2022.

14.    "Joshua Williams" bears a surname entirely different from Ms. Wade's and is associated with a different Social Security number, date of birth, address, and other identifying information than Ms. Wade.

15.    Clarity's file on Ms. Wade is an example of a mixed file.

16.    A mixed file is a credit file that contains information concerning two or more people, rather than the one person about whom it should relate.

17.    Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of credit applicants.

18.    Clarity also incorporates data such as bank accounts and employment information into risk scores that it often provides to certain end-users upon request.

19.    Thus, Clarity's inclusion of credit information and personally identifying information belonging to another consumer has a severe, negative effect on Ms. Wade's ability to obtain credit, and exposes her confidential information to third parties who never requested a report on her.

20.    Clarity knows that its automated systems often erroneously match tradeline and identifying information to an incorrect consumer's credit file based on minimal commonalities. Despite such knowledge, Clarity has declined to correct its systems.

## Clarity Sells Consumer Reports without a Permissible Purpose

21.    Clarity, a CRA, has a legal obligation to furnish consumer reports only to those with a permissible purpose to obtain them. 15 U.S.C. § 1681b.

22.    Despite that obligation, on February 7, 2022, and again on April 28, 2023, Clarity sold a consumer report containing information belonging to Ms. Wade in response to a credit application submitted by, or under the name of "Joshua Williams."

23.    These consumer reports were sold by Clarity to Cash Advance Now and WithU Loans, two deep subprime lenders that operate online and claim affiliation with a Native American tribe.

24.    Ms. Wade did not apply for credit with WithU Loans on April 28, 2023.

25.    Ms. Wade did not apply for credit with Cash Advance Now on February 7, 2022.

26.    Cash Advance Now and WithU Loan require each applicant to submit a complete set of identifying information – including full name, date of birth, Social Security number, and street address – in order to apply.

27.    Cash Advance Now and WithU Loans then provide this identifying information to Clarity when ordering a consumer report.

28.    The identifying information provided to Clarity by Cash Advance Now and WithU Loan contained the name "Joshua Williams," as well as a Social Security number, date of birth and address belonging to Joshua Williams.

29. Despite this, Clarity somehow matched the requests from each lender to Ms. Wade's file and sold a report containing Ms. Wade's credit information.

30. As Ms. Wade did not apply for credit, Clarity had no permissible purpose to sell the two consumer reports – one each to Cash Advance Now and WithU Loans – that contained her information.

31. Clarity had no reason to believe it had a permissible purpose to furnish a report on Ms. Wade to these lenders. Having received a request bearing the name, date of birth, Social Security number, and address of "Joshua Williams" – none of which matched Ms. Wade – Clarity knew or should have known that the request did not concern Ms. Wade. There are no meaningful commonalities between Ms. Wade and "Joshua Williams" that could have justified Clarity's decision to treat a request for one as a request for the other.

### Additional Inaccuracies in Clarity's File Regarding Ms. Wade

32. Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

33. On April 30, 2026, Ms. Wade requested and obtained a copy of her consumer disclosure from Clarity ("Clarity's Disclosure").

34. Clarity's Disclosure provided Ms. Wade with a snapshot of the content of her Clarity file at the time of her request.

### Clarity Violated the FCRA by Redacting Driver's License Number

35. Clarity's Disclosure to Ms. Wade revealed that Clarity's file on her

included a Florida driver's license entry as "XXXXXXXXX8040." Of the entry's 13 characters, Clarity masked nine on its Disclosure – leaving only four characters visible to Ms. Wade.

36.    The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

37.    The statute permits a CRA to truncate a consumer's Social Security number in the disclosure on the consumer's request, 15 U.S.C. § 1681g(a)(1)(A), and separately governs the truncation of credit and debit card numbers on electronically printed receipts, 15 U.S.C. § 1681c(g).

38.    Nothing in the FCRA authorizes a consumer reporting agency to redact a driver's license number in a consumer's file disclosure.

39.    Because Clarity has masked the majority of the characters in the entry, Ms. Wade cannot determine from the disclosure whether the license number Clarity is reporting reflects her actual Florida driver's license, a transposition or data-entry error, a stale or superseded license number, or a license number belonging to a different consumer altogether.

40.    Clarity's redaction of this information was particularly worrisome to Ms. Wade, as Clarity was associating a completely unrelated individual with her.

41.    Clarity's redaction does not aid the accuracy of its disclosure – it forecloses her ability to verify the underlying data at all.

42.     Clarity's decision to disclose the entry only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of her file as 15 U.S.C. § 1681g(a)(1) requires.

**Clarity Incorporated Inaccurate Housing Information into Ms. Wade's File**

43.     Clarity's Disclosure to Ms. Wade also revealed that her Clarity file included conflicting housing statuses during overlapping timeframes.

44.     For example, Clarity reported Ms. Wade's housing status as "OTHER" from August 3, 2021 through March 10, 2026; "OWN" from July 19, 2021 through April 9, 2026; and "RENT" from October 15, 2021 through October 3, 2025; and "X" as of November 23, 2022.

45.     The multiple and contradictory housing statuses Clarity reported for Ms. Wade cannot all be simultaneously accurate.

46.     The designation "OTHER" is a catch-all category not defined anywhere in Clarity's consumer disclosure, providing no meaningful information to a lender. More importantly, it is false – Ms. Wade was not living in an "OTHER" housing situation at any point relevant to Clarity's reporting.

47.     Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk and treat an "OTHER" housing status as less stable than "OWN" or "RENT." That treatment leads to less favorable lending terms, or outright denials of credit, for Ms. Wade.

48.     Consequently, Clarity's inclusion of inaccurate and conflicting housing status data had a significant negative impact on Ms. Wade's ability to obtain new credit.

49.     Among the housing-status values Clarity incorporated into Ms. Wade's consumer file is the bare letter "X" – a value that, on its face, is not a housing status at all. Clarity reported Ms. Wade's housing status as "X" as of November 23, 2022, and disclosed that value to third parties as if it were a substantive description of her living situation.

50.     A consumer reporting agency following reasonable procedures within the meaning of 15 U.S.C. § 1681e(b) would recognize that "X" is not a housing status and would either reject the submission, route it to manual review, or, at minimum, decline to display it to downstream subscribers as if it were a real value. Clarity did none of those things.

51.     Clarity also frequently misreported Ms. Wade's length of residential history, often contradicting itself in its own reporting, as the following examples illustrate.

52.     Most strikingly, on December 14, 2021 at 5:21:51 PM, Clarity incorporated data reporting Ms. Wade resided at her address for 43 Months. Just 30 seconds later at 5:22:21 PM, Clarity incorporated data reporting Ms. Wade had resided at her address for 0 Months.

53.     Thus, Clarity's report indicates Ms. Wade lost three years of residential history in just 30 seconds, which is impossible.

54. Similarly, on April 28, 2023 at 4:13:13 PM, Clarity incorporated data reporting Ms. Wade resided at her address for 122 Months. Just two minutes later at 4:15:42 PM, Clarity incorporated data reporting Ms. Wade had resided at her address for 216 Months.

55. Thus, Clarity's report indicates Ms. Wade gained seven years of residential history in just two minutes, which is impossible.

56. The overlapping and contradictory residential timelines Clarity reported – including Clarity's repeated reports that Ms. Wade had resided at her current address for "0 Months" – create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Ms. Wade has recently moved, has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

**Clarity Reported Inaccurate Employment Information on Ms. Wade**

57. Clarity's Disclosure to Ms. Wade also contains substantial distortions about Ms. Wade's employment history.

58. The same defect that affects Clarity's residential history reporting affects its employment-tenure reporting.

59. For example, on December 14, 2021 at 5:18:11 PM, Clarity reported Ms. Wade had been with her employer for 0 Months. Just 4 minutes later at 5:21:51 PM, Clarity reported Ms. Wade had been with her employer for 36 Months. It is

impossible for a consumer to gain three years of employment history in four minutes on a single day.

60.     The multiple timeline impossibilities Clarity incorporated into Ms. Wade's credit file with respect to her employment tenure – including Clarity's repeated reports that Ms. Wade had been with her employer for "0 Months" – are not only clearly false given their chronological impossibilities, but they also create a misleading and unreliable record of Ms. Wade's employment stability and the damaging impression that Ms. Wade was either repeatedly unemployed or had a tendency to abruptly switch occupations.

61.     Additionally, Clarity incorporated an invalid employer address of "NULL NULL NULL" into Ms. Wade's credit file.

62.     Such reporting provides no meaningful information to a potential lender and was the likely result of the insertion of default, dummy, or placeholder data – the word "null" is itself a stock placeholder used when information that should be present is missing.

63.     Thus, Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

64.     Clarity's failure to maintain reasonable data-filtering procedures is further evidenced by its inclusion of multiple fragmented, duplicate, and near-identical variations of the exact same employer names.

65.     For example, within the Employer Name section of Ms. Wade's Clarity Disclosure: Clarity incorporated "DONNA B S CLEANING," "DONNA B'S CLEANING," "DONNA BEE'S CLEANING," "DONNA BS CLEANING" and "DONNA B\'S CLEANING" as if each represented a distinct employer.

66.     Clarity's Disclosure included "DONNA B'S" and "DONNA BS" as if each represented a distinct employer. In each instance, Clarity failed to reconcile or merge these highly redundant entries and instead published them as entirely distinct employment histories, creating the misleading impression that Ms. Wade worked for, or moved between, far more employers than she did.

67.     Clarity's reporting further demonstrates a basic failure to confirm that data is being placed in the correct section of her credit file. The value "DONNA B'S CLEANING," "DONNA BS," "DONNA BS CLEANING," and "SELF EMPLOYED" each appear in Ms. Wade's file as both an Employer Name and an Occupation.

68.     An employer is a business; an occupation is a job function the consumer performs. These are categorically distinct types of information, and Clarity's own disclosure separates them into distinct sections.

69.     The appearance of the same value in both fields is the signature of an intake process that accepts whatever data furnishers transmit without confirming the data is even being placed in the correct field.

70.    A reasonable procedure to assure maximum possible accuracy would, at minimum, refuse to populate the Occupation field with values that are obviously company names.

71.    Clarity also incorporated "123 MAIN STREET ORANGE PARK FL" and "NULL NULL NULL" each as valid Employer Addresses in Ms. Wade's credit file.

72.    These are prime examples of Clarity's use of dummy, placeholder information in a consumer's credit file when a data furnisher fails to input correct data or fails to provide properly formatted data.

73.    Notably, none of these addresses includes a ZIP code, an obvious red flag that no real-world address validation could have permitted.

74.    Despite information like this being made-up placeholder data, Clarity does not disclose as much to consumers or to creditors when it sells the data.

75.    Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, such as the above, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

### Clarity Reported Inaccurate Income Information on Ms. Wade

76.    Clarity's file also contains 38 different income figures for Ms. Wade, ranging from $400 to $9,700 per month, including: $400, $2,000, $3,125, $3,686, $4,900, and $9,700.

77.    Most tellingly, on December 14, 2021, alone, Clarity reported three different Net Monthly Income figures for Ms. Wade: $525, $1,500 and $2,000.

78.    A person can only have one income at any given moment; reporting materially different income figures for the exact same date is, on its face, so atypical and internally contradictory that the data is virtually assured to be false.

79.    No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if each were accurate on the same date.

80.    Similarly, on April 28, 2023, Clarity simultaneously reported Ms. Wade's Net Monthly Income as both $2,917 and $4,600 – another set of mutually exclusive figures Clarity reported for a single date.

81.    Again, on December 29, 2021, Clarity simultaneously reported Ms. Wade's Net Monthly Income as both $3,250 and $3,350 – another set of mutually exclusive figures Clarity reported for a single date.

82.    Likewise, on October 8, 2022, Clarity simultaneously reported Ms. Wade's Net Monthly Income as both $3,792 and $7,583 – another set of mutually exclusive figures Clarity reported for a single date.

83.    And again, on March 26, 2025, Clarity simultaneously reported Ms. Wade's Net Monthly Income as both $7,500 and $9,700 – another set of mutually exclusive figures Clarity reported for a single date.

84.    Clarity reported Ms. Wade's Net Monthly Income was $400 as of June 8, 2024.

85. $400 per month is less than Florida's minimum wage and falls below the federal poverty level. Reporting such an implausibly low income for Ms. Wade is false, highly defamatory, and financially damaging.

86. Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness. By reporting wildly inconsistent and internally contradictory income figures for Ms. Wade, Clarity's file creates a false and misleading picture of Ms. Wade's financial situation, significantly increasing the likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

87. Clarity's reporting of Ms. Wade's pay frequency is also internally inconsistent, and thus false.

88. Clarity's file lists seven different pay frequencies for Ms. Wade – "BI WEEKLY," "BI-WEEKLY," "BIWEEKLY," "MONTHLY," "SEMIMONTHLY," "TWICEMONTHLY" and "WEEKLY" – even though a consumer is paid on only one schedule at any given time.

89. These pay schedules are mutually exclusive, as a person paid weekly is not also paid monthly.

90. Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

91. Clarity's file also indicates that Ms. Wade was paid "JUST BIWEEKLY."

92. The word "Just" is meaningless in this context and provides no information beyond "BIWEEKLY," yet Clarity's systems treat it as a distinct pay frequency.

93. Clarity's file indicates that Ms. Wade was paid "W" – which is not a recognized payroll designation.

94. Clarity's credit file does not include a legend defining what "W" pay status means.

95. These entries do not correspond to any actual pay schedule and could not have survived any reasonable procedure designed to assure maximum possible accuracy of consumer reports.

96. The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

97. Consequently, Clarity's inclusion of demonstrably false information about Ms. Wade's employment, income, housing status, and identifying information had a significant negative impact on Ms. Wade's ability to obtain new credit with favorable terms.

98. Clarity has sold at least 80 consumer reports regarding Ms. Wade in the past two years.

99. Each report sold by Clarity contained false information about Ms. Wade's employment history, housing status, income, and more, as outlined above.

100.    The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

>   Accuracy of Report.  Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. §1681e(b).

101.    Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Wade.

102.    Clarity's procedures which resulted in the inclusion of contradictory and obviously-false data in Ms. Wade's reports were unreasonable.

## Clarity Fails to Meaningfully Disclose Legally Required Information

103.    On or about April 30, 2026, Ms. Wade requested a copy of her consumer credit disclosure from Clarity.

104.    Upon receipt of Ms. Wade's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

105.    The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

106. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

107. For example, Clarity's disclosure shows an inquiry made on March 10, 2026 which Clarity identified to Ms. Wade only as "Redwater Lending/White Pines/Integra."

108. This single inquiry purports to identify three separate end users – "Redwater Lending," "White Pines," "Integra" – bundled together as one entry, with no indication which of these entities actually requested the report or what their relationship to one another is.

109. The FCRA requires identification of *each* person who obtained a consumer report – not a slash-delimited list of candidates from which the consumer is left to guess.

110. This pattern is not isolated. On January 21, 2026, Clarity disclosed an inquiry as "CCFLOW/TLS/AF247" – again purporting to identify three separate end users – "CCFLOW," "TLS," and "AF247" – within a single entry, without naming any one of them as the actual requesting party or providing the full trade name of any.

111. Likewise, Clarity disclosed an inquiry on November 14, 2025 as "Napa Lending/Infinity/Insight," combining three separate entities into a single entry without identifying any one of them as the person who obtained Ms. Wade's consumer report.

112. On October 3, 2025, Clarity disclosed an inquiry as "Uplift Loans/Tekambi/Financial Technologies," once again combining three separate entities into a single entry without identifying any one of them as the person who obtained Ms. Wade's consumer report.

113. Whether bundled with a recognizable name, or composed entirely of opaque abbreviations, none of these disclosures provided Ms. Wade with the address, phone number, or other contact information that would allow her to identify which entity actually obtained her consumer report or to follow up with that entity directly.

114. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

115. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

116. Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Wade great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

117. Clarity's incomplete disclosure of who accessed Ms. Wade's credit report and why caused Ms. Wade significant frustration, stress, and concern.

### Clarity Fails to Investigate Disputes

118. Clarity, unlike its parent company Experian Information Solutions, Inc. ("Experian"), does not provide consumers any ability to dispute inaccurate information online.

119. On May 13, 2026, after becoming aware of Clarity's reporting, Ms. Wade disputed the accuracy of the false information appearing on her consumer disclosure to Clarity, including the inaccurate personal information, residential information, employment information, and income information.

120. Clarity, upon receipt of Ms. Wade's dispute, was required to make a reasonable investigation into her disputes and report the results of the investigation back to her within 30 days. See 15 U.S.C. § 1681i(a)(1)(A).

121. On May 20, 2026, Clarity responded to Ms. Wade's dispute, but rather than investigate, Clarity stated that it would not investigate her dispute at all.

122. Clarity's outright refusal to investigate is a failure to make any reasonable investigation as required by the FCRA, § 1681i(a)(1)(A); a CRA that declines to investigate has, by definition, conducted no investigation at all.

123. Under 15 U.S.C. § 1681i(a)(1)(A), the duty to reinvestigate is mandatory and attaches the moment the CRA receives the dispute. *See, e.g., Younger v. Experian Info. Sols., Inc.,* 817 F. App'x 862, 866 (11th Cir. 2020).

124.    The fact that Clarity failed to make any investigation into multiple and obvious errors is inherently unreasonable.

125.    Ms. Wade's experience with Clarity is far from unique.

126.    Clarity frequently fails to investigate consumer disputes, either ignoring them completely or sometimes sending a form letter to the consumer stating it could not identify what was being disputed, even when the consumer's dispute is crystal-clear.

127.    Clarity, unlike Experian, does not utilize e-OSCAR, an online platform designed to quickly, efficiently, and effectively resolve consumer disputes.

128.    Clarity must thus use much more labor-intensive methods to investigate disputes.

129.    On information and belief, Clarity frequently declines to investigate disputes as a means to avoid the time and cost of investigating consumer disputes, which it lacks any efficient way of processing.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

130.    Clarity operates in stark contrast to its parent company, Experian.

131.    While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

132. In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks.

133. Clarity's file on Ms. Wade is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

134. The impossibilities in Ms. Wade's file are not isolated transcription errors traceable to a single furnisher. They are pervasive and structural – spanning every category of data Clarity reports, including identity, residence, employment, income, and contact information – and they share a common signature: each is the kind of error that a single validity check would have caught before the data was incorporated into Ms. Wade's file and sold to creditors.

135. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint and thus knows that its procedures are unreasonable.

136. Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Ms. Wade.

**Damages Suffered by Ms. Wade**

137.   As a direct and proximate result of Clarity's inaccurate reporting, Ms. Wade applied for credit and was either denied outright or offered credit on materially less favorable terms than she would have received had Clarity's file accurately reflected her true creditworthiness.

138.   Ms. Wade has also suffered damages, including wasted time trying to figure out what the information in her Clarity file means and how it got there, lost financial opportunities, less favorable credit terms, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

139.   As of the date of this filing, Clarity continues to include the aforementioned false information in Ms. Wade's credit file. As such, Ms. Wade demands that Clarity conduct an investigation upon service of this lawsuit and correct her file within 30 days.

140.   Ms. Wade has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

**COUNT I**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

141.   Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein.

142.   Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Wade, as Clarity sold consumer reports containing the erroneous

information outlined above, concerning her residential and employment history, and even her identity, as Clarity incorporated information belonging to an unrelated consumer into her file.

143.    Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

144.    Clarity's conduct was thus willful or done with a reckless disregard for Ms. Wade's rights under the FCRA.

145.    As a result of its conduct, Clarity is liable to Ms. Wade for the greater of Ms. Wade's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a.    the greater of Ms. Wade's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.    such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

146. Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

147. Clarity owed Ms. Wade a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Wade.

148. Clarity violated 15 U.S.C. § 1681e(b) when it sold consumer reports containing the erroneous information outlined above, concerning her residential and employment history, and even her identity, as Clarity incorporated information belonging to an unrelated consumer into her file.

149. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Ms. Wade is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

150. Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein.

151. Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Wade with a redacted version of her Consumer Disclosure.

152. Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

153. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

154. As a result of its conduct, Clarity is liable to Ms. Wade for the greater of her actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Wade's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)
### (Pled in the Alternative to Count III)

155. Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein, and pleads this count strictly in the alternative to Count III.

156. Clarity owed Ms. Wade a legal duty to accurately disclose all the information in her credit file upon her request.

157. Clarity breached this duty when it only provided Ms. Wade with a redacted version of her Consumer Disclosure.

158. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Wade is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

159. Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein.

160.    Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Ms. Wade's consumer report during the one-year period preceding the date upon which she made the request.

161.    Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

162.    Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

163.    As a consequence, Clarity is liable to Ms. Wade for the greater of Ms. Wade's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a.    the greater of Ms. Wade's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.    such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (Pled in the Alternative to Count V)

164. Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein, and pleads this count strictly in the alternative to Count V.

165. Clarity owed Ms. Wade a legal duty to disclose the identity of each user that obtained her consumer report within one year of Ms. Wade's request.

166. Clarity breached this duty when it failed to identify each person, including end-users, who procured Ms. Wade's consumer report.

167. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Ms. Wade is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## COUNT VII
## WILLFUL VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)

168. Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein.

169. Clarity violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation after receiving notice of a dispute from Ms. Wade in May 2026, since it failed to conduct any investigation at all.

170. Clarity's conduct was a result of its regular policies and procedures, which frequently result in it not conducting any investigation at all, and/or claiming it "can't identify" what the consumer is disputing, even when it is abundantly clear, as in the instant matter.

171. Clarity's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Wade.

172. Accordingly, pursuant to 15 U.S.C. § 1681n, Clarity is liable to Ms. Wade for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

   a.   the greater of Ms. Wade's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

   b.   punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

   d.   such other relief that this Court deems just and proper.

## COUNT VIII
## NEGLIGENT VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count VII)

173.    Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein, and pleads this count strictly in the alternative to Count VII.

174.    Clarity had a legal duty to reasonably investigate Ms. Wade's May 2026 dispute.

175.    Clarity breached this duty when it failed to make any investigation whatsoever.

176.    Clarity's breach violated 15 U.S.C. § 1681i(a)(1)(A), and as a result, Clarity is liable to Ms. Wade for her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT IX
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

177.    Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein.

178.    Clarity violated 15 U.S.C. § 1681b(a)(3) when it furnished two

consumer reports regarding Ms. Wade – one each to Cash Advance Now and WithU Loans – in response to credit applications submitted in the name of "Joshua Williams" – applications that concerned a different, unrelated individual and not Ms. Wade.

179. Clarity had no reason to believe it had a permissible purpose to furnish reports regarding Ms. Wade.

180. Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

181. Clarity's conduct was thus willful, intentional, and/or exhibited a reckless disregard for its duties under the FCRA.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a.    the greater of Ms. Wade's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.    such other relief that this Court deems just and proper.

## COUNT X
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)
### (Pled in the Alternative to Count IX)

182. Ms. Wade adopts and incorporates paragraphs 1 - 140 as if fully stated herein, and pleads this count strictly in the alternative to Count IX.

183. Clarity had a legal duty to Ms. Wade to only sell consumer reports to those persons with a permissible purpose to obtain the reports.

184. Clarity breached this duty when it furnished two consumer reports regarding Ms. Wade – one each to Cash Advance Now and WithU Loans – in response to requests concerning a different, unrelated individual, and thus without a permissible purpose as to Ms. Wade.

185. Clarity's breach violated 15 U.S.C. § 1681b(a)(3), and as a result, Clarity is liable to Ms. Wade for her actual damages, reasonable attorneys' fees, and costs.

WHEREFORE, Ms. Wade respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

Page **33** of **34**

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on June 25, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
3505 E. Frontage Road, Suite 145
Tampa, FL 33607
Tel: (813) 567-1230
BGeiger@seraphlegal.com
Service@seraphlegal.com
*Lead Counsel for Plaintiff*